## H. W. BENEDICT & COMPANY, Appellants, v. INLAND GRAIN COMPANY, Respondent.

### Kansas City Court of Appeals, May 8, 1899.

1. **Commission Merchants**: NEGLIGENCE: DELAY IN SALE: EVIDENCE FOR THE JURY. A factor is required to act in good faith and with due diligence, and if he does not, is liable for resulting damage; and long delay with a falling market is evidence to go to the jury on the question of sound discretion and reasonable diligence, and he should also keep his patron informed as to the state of the market.

2. ———: ———: DIRECTIONS: INSTRUCTIONS. Where the factor is under no special directions he may sell within a reasonable time, and instructions in this case relating to the question of negligence and the duty of the factor are approved.

*Appeal from the Jackson Circuit Court.*—HON. E. P. GATES, Judge.

AFFIRMED.

H. A. YONGE for appellants.

(1) This consignment of hay having been made generally, and advances made and liabilities incurred thereon

by plaintiffs, plaintiffs were clothed by the law with the right to exercise their own discretion as to the time, mode and price at which said hay might be sold. Brown v. McGran, 14 Pet. 479; Field v. Farrington, 10 Wall. 141; Given v. Lemoine, 35 Mo. 110; Howard v. Smith, 56 Mo. 314. (2) There was no evidence in the case tending to prove any negligence on the part of plaintiffs. It is conclusively shown that they were skillful hay salesmen; that they exercised more than ordinary diligence in endeavoring to make a satisfactory sale of the same; that their failure to do so was due to no fault of theirs, but to the glutted condition of the hay market. (3) In the discharge of his duty to his principal, a commission merchant is required to act with the utmost good faith, and where he acts with ordinary diligence and reasonable skill in the performance of this duty, he is not liable for error of judgment. Babcock v. Orbison, 25 Ind. 190; Rice v. Brook, 20 Fed. Rep. 611; Millbrook v. Deneston, 21 N. Y. 386. The sale at public auction having been proven by undisputed testimony to have been made according to the known usages of trade and business at New Orleans, under the conditions then existing, defendant is bound by the same, notwithstanding it may have had no knowledge of the same. Philips v. Moir, 69 Ill. 155; Randall v. Kepler, 60 Maine, 37. There no evidence of any negligence or bad faith on the part of the plaintiffs in the case. An instruction should have been given to the jury to return a verdict for the plaintiffs. Given v. Lemoine, 35 Mo. 110. (4) The first declaration of law given to the jury on behalf of the defendant is not in harmony with any of the instructions given by the court below to the jury at the request of the plaintiffs, and said instruction is not the law as applicable to the case. Brown v. McGran, 14 Pet. 479; Field v. Farrington, 10 Wall. 141; Given v. Lemoine, 35 Mo. 110; Howard v. Smith, 56 Mo. 314; Story on Bailments [9 Ed.], 455; Story on Agency, 192, 193 and 198; Moore v. Striegel,

50 Mo. App. 308; Zwisler v. Storts, 30 Mo. App. 164; Waddingham v. Hulett, 92 Mo. 526.

ROBINSON & CARKENER for respondent.

(1) A factor must act both in good faith and with diligence in the discharge of his duties, and, if he does not and damage result to his principal, he is liable therefor. Story's Agency, sec. 186; Mechem's Agency, sec. 1006; Burnett v. Hockaday, 61 Mo. App. 627; Switzer v. Connett, 11 Mo. 88, 90. And "long delay, in view of a falling market," is evidence to go the jury on the question of the factor's "exercise of a sound discretion, good faith and reasonable diligence." Field v. Farrington, 10 Wall. (U. S.) 151. (2) It is the duty of a factor, in the absence of special instructions, to sell goods consigned to him for sale within a reasonable time after he has received them. And the simple "consignment for sale," implies an order to sell within such time. 3 Am. and Eng. Ency. of Law, p. 327; Atkinson v. Burton, 4 Bush (Ky.) 290; Mechem's Agency, sec. 1018; Field v. Farrington, 10 Wall. (U. S.) 141, 150, 151. (3) It is the duty of a factor to keep his principal advised of the state of the market at his place, and failure to do so will be negligence; much more failure to answer repeated letters of inquiry by his principal concerning the consignment, etc. Given v. Lemoine, 35 Mo. 110; see instruction approved at pp. 118, 119. (4) The fact that a factor has made advances does not relieve him from the obligation to use ordinary diligence, a sound discretion, and to sell within a reasonable time. This is the law as expressly laid down in a case where very large advances had been made. Field v. Farrington, 10 Wall. (U. S.) 141; instruction on page 146, passed on at pages 150, 151. (5) Neither does the fact that the factor has made advances justify him in neglecting to obey the instructions or expression of the wishes of his principal, unless it is necessary to protect himself in his

advances, either because of the insolvency of the consignor, or his failure to reimburse the factor, after demand made; and then the factor must still act "with ordinary diligence, a sound discretion and within a reasonable time." 3 Am. and Eng. Ency. of Law, p. 327; Mechem's Agency, sec. 1009, p. 828; Bank v. White, 65 Mo. App. 677; Howard v. Smith, 56 Mo. 314; Phillips v. Scott, 43 Mo. 86, 92; Switzer v. Connett, 11 Mo. 88, 91; Bigelow v. Walker, 58 Am. Dec. 160, note.

SMITH, P. J.—The plaintiffs were commission merchants engaged in selling hay on commission at New Orleans, and the defendant was an incorporated commission company engaged in buying and selling hay at Kansas City. About the middle of January, 1896, defendant shipped to the plaintiffs three car loads of hay to be sold on commission on the New Orleans market. At the time of the shipment the defendant drew three drafts amounting to $275 STATEMENT. against said consignment which were paid by the plaintiffs. The hay was not sold until the tenth of August following.

The account of sales reported showed that it brought $10 per ton. After deducting advancements and charges, there appeared to be due plaintiffs $202.01, the payment of which was demanded by plaintiffs and refused by defendant, and to recover which this suit was brought.

The defendant by its answer pleaded a counterclaim to the effect that the plaintiffs had negligently held the hay shipped to them by defendant and that if they had exercised ordinary diligence they could have sold the same at a profit, and that in consequence of the negligence of the plaintiffs in the premises defendant had been damaged, etc. The plaintiffs in their reply alleged as an excuse for the delay in making sale of the hay a drooping market, occasioned by the supply exceeding the demand, etc.

There was a trial and judgment for defendant for $21.

Benedict & Co. v. Inland Grain Co.

The plaintiffs assign as error the action of the court in giving an instruction for defendant which told the jury that it was the duty of plaintiffs to sell the hay in question within a reasonable time after receiving the same, unless instructed by the defendant not to do so, and if the jury believe from the evidence in the case that the plaintiffs, by reason of negligence or carelessness on their part and without any instructions from defendant not to sell said hay, failed to sell the same within a reasonable time after it was received by them, and further believe that the defendant sustained damage by reason of such delay in the sale of said hay, then plaintiffs became liable to defendant for the amount of such damage, and it is the duty of the jury to take the same into consideration in arriving at a verdict in this case; and if the jury find from the evidence in the case that the amount of such damage was equal to, or in excess of, a sum equal to the difference between the price for which such hay was sold by the plaintiffs and the amount of the several sums advanced by them to and for defendant, including freight, commission and other charges stated in their petition, if reasonable, then the plaintiffs are not entitled to recover in this action and the verdict will be for defendant on the cause of action alleged in the petition. And that although the jury may believe that at the time defendant shipped the hay in question, or soon after, it instructed the plaintiffs to exercise their own judgment and discretion as to the sale of said hay, yet that fact did not authorize said plaintiffs to keep said hay on hand unsold an unreasonable length of time, and if the jury believe that plaintiffs negligently and carelessly failed to sell said hay within a reasonable time after receiving such instructions from defendant, then they are liable to defendant for such damage (if any) as the jury may believe defendant sustained by reason of such failure to sell said hay within a reasonable time.

The ground of objection urged against the action of the court in giving defendant's said instruction is that the issue

of negligence is thereby submitted without any authorizing evidence. It is conceded that the plaintiffs held without sale the defendant's consignment from the latter part of January, 1896, until the tenth of August, following. The uncontradicted evidence shows that between the date of the receipt of the consignment by plaintiffs and the twenty-third of May following, the defendant received from the plaintiffs, through the mails, weekly prices current, issued by the latter, which showed that there was, during this period, very little fluctuation in the prices of hay in the New Orleans market. The plaintiffs' price current of January 26, 1896, was as follows: "Gentlemen:

We quote you to-day (timothy) fancy, $18; choice, $17, $17.50; strict prime, $16 to $16.50; good prime, $15 to $15.50; ordinary prime, $13 to $14; prairie, $8; Texas, $9; Kansas, $9 to $10.                    Yours truly,

"H. W. Benedict."

The plaintiffs testified that the board of trade quotations were wholly fictitious; that there were two sets of quotations, one for the west and the other for the city deals, and that there was a difference of about $3 a ton in favor of city dealers. These fictitious and misleading quotations, it would seem, were from time to time sent by the plaintiffs to defendant without explanation. But if the three dollar fiction be deducted from the price per ton, as quoted by plaintiffs, still the price which the defendant's hay was reported to have brought falls far short of what it ought to have brought, even if only prime quality. The testimony of both the producer of the hay and Box, who purchased it for defendant, was that it was in quality choice. These witnesses were experienced in the production, handling and grading of hay. The plaintiffs' witness testified that defendant's hay was only prime, which in the New Orleans market seems to have been worth less by some $2 per ton than choice hay. It may have been when defendant's hay was sold that owing to its long detention and exposure

to the atmospheric influences prevailing at the place of consignment, it did not grade as high as it would have had it been disposed of within a reasonable time after its receipt by plaintiffs.

Notwithstanding that, when the defendant's hay reached the place of consignment the supply on the market was in excess of the demand, a fact which it appears was well known to plaintiffs, yet plaintiffs continued to hold the same, well knowing, too, that the new crop was about to arrive to still further augment the existing over-supply. The plaintiffs knew, or ought to have known that the new crop would be preferred to the old and that in consequence of that the price of the old would continue to droop. Yet, as experienced dealers in hay, the plaintiffs held on to the defendant's consignment until, if their account of sales is to be credited as correct and *bona fide,* there was practically little or no demand for old hay of any grade.

It appears that the defendant wrote the plaintiffs several letters requesting report of sales, and to one of these the plaintiffs answered giving as an excuse for their failure a dull and drooping market. To this the defendant on February 15, 1896, replied that, "you probably have done the best that could be done with the hay. It is in your hands and you will act on your best judgment as to time to sell and at what price." The defendant after this wrote plaintiffs one or more letters but received no response. Finally on August 1, the defendant wrote plaintiffs saying, "We certainly think that you have had ample time to make returns and can not understand this method of doing business." On the twenty-fifth of the same month the plaintiffs responded inclosing account of sales showing result previously stated. It appears that plaintiffs on receipt of the defendant's said letter of August 1, concluded to sell the defendant's consignment and so caused it to be sold at auction in the yards of the delivering carrier where it had remained since its arrival, under a tarpaulin.

The question now is, was this evidence sufficient to justify the submission of the issue of negligence to the consideration of the jury? It is elemental that a factor is required to act both in good faith and with diligence in the discharge of his duties and if he does not, and damage result to his principal, he is liable therefor. Burnett v. Hockaday, 61 Mo. App. 627. And long delay, in view of a falling market, is evidence to go to the jury on the question whether or not the factor has exercised sound discretion, good faith and reasonable diligence. Field v. Farrington, 10 Wall. 151. The evidence discloses that authority was conferred on the plaintiffs to sell the defendant's hay whenever they, in the exercise of a sound discretion, should think it advantageous to do so. It was the duty of the plaintiffs to keep the defendant advised of the state of the market so far as affected its interest. If the plaintiffs had performed this duty and exercised their discretion in good faith in making the sale, then they were not liable for any loss resulting from not making an earlier sale. Given v. Lemoine, 35 Mo. 110. But the plaintiffs did not keep the defendant advised as to the state of the market except by sending it prices current which they testify were fictitious and therefore misleading, and consequently they neglected a duty they owed the defendant.

*COMMISSION merchants: negligence: delay in sale: evidence for the jury.*

This is not a case where the consignor was insolvent or had refused to furnish indemnity for the advancements, in consequence of which the consignees sold the consignment in order to reimburse themselves, but it is one where the consignees have neglected to sell until the market had so declined that the consignors suffered great loss by such neglect. The plaintiffs do not pretend that the delay in making the sale was influenced by the fact that they had made advancements. No such excuse is pleaded or relied on. The case must be considered as if no advancement had been made.

Neither in the defendant's letters notifying plaintiffs of the consignment to them, nor in any subsequent ones does it appear that the defendant gave the plaintiffs any special instructions as to price or time, so that it was the duty of the plaintiffs to make the sale within a reasonable time after the receipt of the consignment, regard being had of course to the surrounding conditions and circumstances. As the plaintiffs were under no special instructions the law enjoined upon them the duty to sell the defendant's consignments within a reasonable time after they received them. 3 Am. and Eng. Ency. of Law, 327; Mechem on Agency, sec. 1018; Atkinson v. Burton, 4 Bush. (Ky.) 290; Pinkham v. Cracker, 77 Me. 563. It must be observed that this case in its facts has no resemblance to that of Howard v. Smith, 56 Mo. 314, and the other cases therein referred to. It is true, the plaintiffs made advances to the defendant but the latter gave no orders to the former in respect to the time, price and mode of sale. The delay in making the sale was not for the purpose of securing indemnity for the advancements made by plaintiffs. The defendant did not attempt to control the exercise of the discretion with which the plaintiffs were invested in respect to the time or price.

The simple question for the jury was whether or not, under all the facts and circumstances disclosed by the evidence, the plaintiffs made sale in good faith and with diligence, or, which is the same thing, whether or not the plaintiffs made the sale in accordance with the usages of trade and within a reasonable time after the receipt by them of the consignment. If the sale was not so made, the plaintiffs were guilty of negligence and liable to the defendant for the consequences. It seems to us that the defendant's instructions, hereinbefore set forth, expressed to the jury with sufficient clearness and accuracy a proper rule for their guidance. No substantial conflict is perceived between the instructions given for plain-

*Margin note:* ——: ——: directions: instructions.

tiffs and those for defendant.    The case seems to have been
fairly and properly submitted by the instructions, so that
there is no cause for complaint arising out of the action of the
court in that respect.

Plaintiffs have raised several objections to the ruling of
the court in respect to the admissibility of evidence and in re-
fusing instructions and these we have examined but find no
error that would justify us in disturbing the judgment, which
will therefore be affirmed.    All concur.