R. W. MILLSAPS v. MERCHANTS AND PLANTERS' BANK OF
GREENVILLE.

1. CONTRACT OF SALE. *Construction.* *Case.*

A contract purported to be a sale of "one undivided one-third interest in the capital stock" of certain street-railway companies, but stated that "the price paid represents a total price of $15,150, less one-third of the consolidated indebtedness of all of the said railways, which is guaranteed not to exceed $36,700." The note given for the purchase-price exactly equaled one-third of the difference between the total capital stock of the companies and their consolidated indebtedness. *Held,* the contract shows not merely a purchase of an interest in the *capital stock* of the companies, but of one-third of the actual *worth* of the street-railways, namely, the difference between their gross value—shown by their total capital—and their aggregate indebtedness.

2. SAME. *Warranty.* *Breach.* *Bona fide purchaser.*

Such contract does not import a guaranty by the seller, in the nature of a personal obligation to indemnify against loss through its breach, but is a warranty that the indebtedness did not then exceed the amount stated, which warranty, if the representations were not true, was broken so soon as made; and, in a suit on the note, the maker may, under code 1880, § 1124, show the breach, even as against a *bona fide* purchaser for value.

3. EVIDENCE. *Construction of writing.* *Parol testimony.*

Where a writing is intelligible in itself, parol evidence is incompetent to interpret the terms used in it.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

The opinion contains a statement of the facts sufficient to illustrate the only point passed upon by the court.

It will be seen that the court holds that the granting of the peremptory instruction in favor of the plaintiff was erroneous in view of the evidence, which tends to support the fifth plea of the defendant. This plea sets up that the note sued on

was given for the purchase-price of certain stock of sundry street-railway companies of the city of Greenville, and that, at the time of its execution and as an inducement therefor, Harry K. Johnson, the payee, represented-to defendant that the books of said companies showed that the aggregate indebtedness of all the companies did not and would not exceed the sum of $36,700, and that he guaranteed that said debts would not exceed that sum, and defendant, relying upon such representations, executed the note, with the understanding and agreement that, if upon examination of the books the representations and guaranty should be found to be true, defendant would pay the note, and the stock purchased would be transferred and delivered to him, but that the representations and guaranty were, in fact, not true, as would appear from the books aforesaid, the indebtedness largely exceeding the sum so stipulated. A demurrer to this plea was overruled, and issue was joined thereon. It is not necessary to set out the other pleas, since the court finds that they are not sustained by the evidence.

As this action is brought by an indorsee of the note, the sufficiency of the defense in question is referable to § 1124, code 1880, which provides, among other things, that in actions upon assigned promissory notes, bills of exchange, or other writings for the payment of money, the defendant will be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts and set-off made, had or possessed against the same, previous to notice of assignment, in the same manner as though the suit had been brought by the payee.

To meet the defense based upon this statute, plaintiff, by way of replication, pleaded and introduced evidence for the purpose of showing that the note was executed by defendant and delivered to Harry K. Johnson, the payee, for the purpose of having the same negotiated by Johnson, who, pursuant to such understanding, transferred and indorsed the same for value to plaintiff, without notice to plaintiff of any

such guaranty and representations as are pleaded. The evidence touching this was conflicting, and need not be set out.

Argued orally by *W. L. Nugent,* for appellant, and *M. Green,* for appellee.

EDWARD MAYES, Special Judge, delivered the opinion of the court.

This is an action on a promissory note for $2,916.67, executed by the appellant to the order of Harry K. Johnson, and by said Johnson indorsed in blank and transferred to the appellee before maturity. On the trial in the court below, after the testimony was closed, the court, by a peremptory instruction, directed a verdict for the appellee, and this action is the matter complained of here.

The note sued on was given as a part of a contract between the parties thereto, which is embodied in the following writing:

" In consideration of twenty-nine hundred and sixteen and $\frac{67}{100}$ dollars, paid to me by R. W. Millsaps, I, Harry K. Johnson, grant, assign, set over and deliver to said R. W. Millsaps, one undivided one-third interest in twenty-two thousand six hundred dollars of the capital stock of the Greenville Street Railway Company, the total stock being twenty-five thousand dollars; and one-third of the capital stock of the Greenville Electric Street Railway Co., and of the Star Street Railway Co., of Greenville, Mississippi, and of the Suburban Railway Co. The price above paid represents a total price of $15,150, less one-third of the consolidated indebtedness of all of said roads, which is guaranteed by said Johnson not to exceed thirty-six thousand seven hundred dollars at this date. The stock of the Greenville Street Railway Co., an interest in which is above conveyed, is at present pledged to John Gunn as security for its purchase-price, it having been bought by said Johnson from said Gunn. This sale is made in accordance with a contract of sale entered into between the

parties the 22d day of July, 1890, which contract is in the hands of Campbell & Starling, attorneys, and reference is hereby made to it.    Witness my signature, this 20th day of September, 1890.                    HARRY K. JOHNSON."

The writing of July 22d referred to, has been lost, but Mr. Starling testified to its contents ; and it appears to have been only a preliminary memorandum to the same effect as this, the final contract.

The appellant presented several defenses.    It will suffice to say, as to all of them except one, that we think the testimony of the appellant himself shows that they are unavailing, and that the action of the learned judge below was correct.    But one of those defenses, arising under the fifth plea, is in a different attitude, and, in respect to it, we hold that error was committed.

By the contract above set forth, and the preliminary memorandum referred to therein, it is made manifest that what Johnson sold and Millsaps bought was really one-third in a margin of value between the worth of all the property of all the street-railways, placed at $45,450, and the guaranteed sum of all their debts, so guaranteed to be at the time not in excess of $36,700.    This left the margin $8,750, one-third of which is $2,916.67, the exact amount of this note.    Looking through the mere verbiage of the transaction, that was its real substance.    Millsaps was not to pay one-third of the gross value of the railroad property, or $15,150 for one-third of the stock, but the plan was that he was to pay the par for one-third of that margin, and the $36,700 of debts were to be floated, by placing a consolidated mortgage on the entire property, and taking up those debts with the proceeds of the mortgage.    It is plain that, whatever the amount of nominal stock in the roads might be, it was actually worth only so much as the assets exceeded the liabilities; and it was on this basis that they contracted.    If, therefore, there was no such margin of value, the thing bought and sold did not exist.    It is not merely a question of the ability of Johnson to deliver

stock certificates, which are but the evidences of a right, but of the existence of the very substance, the title to which was to be evidenced by the certificates, in whose hands soever they might be.

Now, the appellant claims that the debts guaranteed against really amounted at the time to $44,825, and perhaps more. If this be correct, then the margin of value, of which one-third was sold Millsaps, instead of being $8,750, was $175 or less. The question then arises, whether, in this action, that matter could be investigated, and whether the appellant was injured in its withdrawal from the jury by the court's peremptory instruction; and this question, in both aspects, we answer in the affirmative.

Although the writing of September 20th uses the expression that the amount of the existent liabilities is "guaranteed" to be not in excess of $36,700, and although it is contended that by that expression was meant that if they did exceed that amount Johnson was to take care personally of the excess, we do not so construe the contract. Parol evidence is clearly incompetent for the purpose of interpreting the terms used, and what was offered for that purpose we must disregard. The writing is intelligible in itself. The words used in the writing are in effect a warranty, and a warranty of an existing material fact. That warranty, if it be true, as claimed, that the then existing indebtedness did exceed the sum named, was broken so soon as it was made, and Millsaps acquired, *eo instanti*, the right to recoup against the liability on the purchase-note his demand based on that breach. Tiedeman on Sales, §§ 180, 186; 2 Sutherland on Damages, 121, 128; 1 *Ib.*, 279.

*Judgment reversed and cause remanded.*

Hon. J. A. P. CAMPBELL, being disqualified by reason of interest, did not participate in this decision. EDWARD MAYES, ESQ., a member of the bar, was, by consent, elected to sit in his stead.