## CHARLES G. MILLER *v.* AMERICAN NATIONAL BANK.

1. BILLS AND NOTES. *Draft attached to bill of lading. Anti-commercial statute, code 1892, § 3503.*

> A draft for the price of goods drawn in another state on the purchaser in this state, payable and accepted here, which is, before acceptance, assigned, with the bill of lading for the goods, in such other state, is within our anti-commercial statute, § 3503, code 1892.

2. SAME. *Right of purchaser against assignee of draft for purchase money.*

> If the purchaser of goods shipped, under contract warranting the quality of the goods, from another state to this state, in order to obtain an inspection and the possession of the goods, pay a draft, payable and accepted here, drawn for the purchase price and attached to the bill of lading, and there be afterwards discovered, on inspection of the goods, a breach of warranty, he can maintain an action against an assignee of the draft and bill of lading, to whom payment was made, for the recovery of his damages.

FROM the circuit court of Adams county.

HON. W. P. CASSEDY, Judge.

Charles G. Miller, the appellant, was the plaintiff in the court below; the American National Bank, appellee, was defendant there. Appellant, Miller, of Natchez, contracted to buy from Lowry Hay & Grain Co., of Kansas City, Missouri, a car load of corn, to be delivered at Natchez, the seller guaranteeing the corn would be sound. The corn was shipped consigned to order of American National Bank, of Kansas City, Mo., and to the bill of lading was attached a draft for $232.55, the purchase money of the corn. The draft was drawn by Lowry Hay & Grain Co., on C. G. Miller, at Natchez, and was made payable to American National Bank. The draft attached to bill of lading was purchased outright by American National Bank, and by it forwarded, on its own account, for collection, to a bank at Natchez. Appellant, before he could examine or get the corn, was required to pay, and did pay, the draft for the purchase price, $232.55, and the freight, $86.98—total, $319.53. After so paying, appellant discovered the corn was unsound, and thereupon sold it for the best price he could obtain, $156.50. Thereafter appellant, learning appellee had not taken the draft for collection, but had purchased it, sued out an attachment against appellee, because of his losses, and garnisheed the Natchez bank. At the time of the garnishment, as required by § 4300, code 1892, the Natchez bank was still holding the $232.55 collected by it for appellee, and so answered. Appellee, at the time of purchasing the draft, knew it was given for a car load of corn to be delivered to appellant, but was not a party to the original contract of purchase, and did not know the quality of the corn contracted for or anything about the warranty.

*Ernest E. Brown*, for appellant.

If Lowry Hay & Grain Company had not assigned their

rights, appellant, notwithstanding he had paid for and received the corn, could have recovered damages from them, and the measure of his damages would have been the difference in value of corn actually delivered and the value of corn contracted to be delivered at time and place of delivery. Benjamin on Sales, secs. 897, 903, and note to sec. 903; Tiedeman on Sales, sec. 335; *Jamison* v. *Moon*, 43 Miss., 598.

If the corn had not been assigned c. o. d., or appellant in some way without paying for it had obtained it, and Lowry Hay & Grain Company had sued him for purchase price, he could successfully have set off his loss. Tiedeman on Sales, sec. 335; *Wilkinson* v. *Searles*, 70 Miss., 392.

This court, in *Wilkinson* v. *Searles*, held, as against Searles' suit, Wilkinson could use as a set-off the excess in value of corn contracted for in a former transaction over value of inferior corn actually delivered by Searles. The rights and interests of Lowry Hay & Grain Company in the contract were purchased by appellee before the corn left Kansas City. By having bill of lading issued to appellee and drawing draft on appellant payable to appellee, the Lowry Hay & Grain Company not only assigned the chose in action to appellee, but actually transferred to it the corn, and appellant acquired title to the corn only after he had paid the draft to appellee and received from it the bill of lading. Tiedeman on Sales, sec. 885. "The assignee of a debt or chose in action takes it subject to all the equities that may have arisen respecting it between the assignor and the debtor at the time of the assignment, also to equities that arise against the assignor subsequent to the assignment, if they arise before he gives notice of the assignment to the debtor." Lawson's Rights, Remedies, and Practice, sec. 2663. "The assignee of a chose in action stands exactly in the shoes of his assignor. He succeeds to all of his rights and privileges, but acquires no greater rights than he had in the thing assigned. 2 Am. & Eng. Enc. L. (2d ed.), 1079. If the judgment appealed from be correct, it follows that the protec-

tion intended by § 4300, code of 1892, can always be evaded by dishonest vendors arranging with some bank or third person to purchase, or pretend to purchase, the bills of lading with attached drafts on vendees in this state.    The statute was intended to remedy a long-felt evil, and this court should carry out its spirit and intention.    The judgment of the circuit court dismissing appellant's suit was contrary to the spirit and intention of this statute, to our anti-commercial statute, to the decision of this court in *Wilkinson* v. *Searles*, 70 Miss., 392, and to general principles of law, and should be reversed.

*E. H. Ratcliffe*, for appellee.

It has never been contended by the appellee that the plaintiff was without remedy, but the contention of the appellee is that, this being an action for damages resulting from the breach of a contract made by plaintiff with the Lowry Hay & Grain Company, for the wrongs suffered by him on account thereof, he should pursue the party who committed the breach and was the author of his wrongs.    The American National Bank was not a party nor privy to the contract for the breach of which the plaintiff is seeking redress.    Can it be seriously contended that one may be sued for damages resulting from the breach of a contract he never made ?    It might be that appellant could have tendered back the corn and demanded his money, after discovering the inferior quality of the corn, declined to take it, and upon refusal to return the money he could have maintained an action against appellee for money had and received, but this would have involved a rescission of the contract, which appellant does not offer to do, but stands upon the contract and sues for its breach.    Plaintiff (appellant) had choice of two remedies.    The first remedy was to have tendered back the corn after discovering its damaged condition and demanded the return of his money, it having been paid under a mistake of fact. Second, he might have dealt with the corn exactly as he did and then brought an action against the Lowry Hay & Grain Com-

pany, the parties who had injured him and broken their con-
tract with him.    He adopted neither of these remedies.    He
cannot now, after acceptance of the draft, drawn on him by
the Lowry Hay & Grain Company, and payment of the money,
be heard to assert, as against the payee, that the drawer thereof
had not complied with his contract.    Norton on Bills and Notes
(2d ed.), secs. 70, 142–147; 2 Am. & Eng. Enc. L., 378;
Tiedeman on Commercial Paper, 341.

WHITFIELD, J., delivered the opinion of the court.

The damages for the breach of the warranty of the Lowry
Hay & Grain Company arose out of contract, and were a valid
set-off to any suit by the latter against appellant, and might
have been recovered of it by him, in assumpsit, as money had
and received to his use.    He had the same rights defensively
and affirmatively against the appellee, the assignee of the
Lowry Hay & Grain Company, whether the bill of lading
vested the title to the corn in appellee or not.    Treating the ap-
pellee as owning only the draft, and holding the bill of lading
as collateral security, appellant only connected himself with
that draft by his contract of acceptance, made and payable in
Natchez, and hence clearly within our anti-commercial statute.
Appellant had a good cause of action against appellee.    *Wil-
kinson* v. *Searles,* 70 Miss., 392; *Millsaps* v. *Bank,* 69 Miss.,
918.

*Judgment reversed and cause remanded.*